UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **INDIA PATRICIA GIBSON,**<br><br>**Plaintiff,**<br><br>v.<br><br>**KILOLO KIJAKAZI,**<br>**Acting Commissioner of Social Security,**<br><br>**Defendant.** | No. 1:21-cv-660-ZMF |

## MEMORANDUM OPINION

Plaintiff, India Patricia Gibson, moves for reversal of Defendant Commissioner of the Social Security Administration's decision adopting the findings of an Administrative Law Judge ("ALJ") and denying Gibson's application for Supplemental Security Income and Disability Insurance Benefits. *See* Pl.'s Mot. J. Reversal ("Pl.'s Mot.") 1, ECF No. 18.

On September 29, 2021, by consent of the parties, U.S. District Judge Emmet G. Sullivan referred this matter to a Magistrate Judge for all purposes. *See* Min. Order (Sept. 29, 2021). Pending before this Court are Plaintiff's Motion for Judgment of Reversal and Defendant's Motion for Judgment of Affirmance. *See* Pl.'s Mot.; Def.'s Mot. J. Affirmance ("Def.'s Mot."), ECF No. 20. After considering the parties' submissions and the Administrative Record,[1] the undersigned DENIES Plaintiff's Motion for Judgment of Reversal and GRANTS Defendant's Motion for Judgment of Affirmance in an accompanying order.

---

[1] The Administrative Record consists of thirty exhibits. *See* Administrative R., ECF No. 13. For ease of reference, citations to the Administrative Record will refer to the "AR" and cite to the consecutive page numbers provided in the lower right-hand corner of each page.

I.      BACKGROUND

Statutory Framework

The Social Security Act entitles an individual to disability benefits if she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see* 20 C.F.R. § 416.905(a) (2022).

The Social Security Administration ("SSA") uses a five-step process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920(a)(4) (2022). The claimant bears the burden of proof for the first four steps. *See Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004). First, a claimant must show that she is not presently engaged in "substantial gainful activity." § 416.920(a)(4)(i). Second, she must demonstrate that she has a "severe impairment" that "significantly limits [her] physical or mental ability to do basic work activities." §§ 416.920(a)(4)(ii), (c). Third, the claimant must show that her impairment or combination of impairments "meets or equals" one of the listings at 20 C.F.R. Part 404, Subpart P, App. 1. § 416.920(a)(4)(iii). If it does, then the claimant is deemed disabled and the inquiry ends. *See* §§ 416.920(a)(4)(iii), (d). If not, the ALJ must proceed to step four, which requires the ALJ to determine the claimant's residual functional capacity ("RFC") and consider whether, in light of the RFC, the claimant can still perform any past work. *See* § 416.920(a)(4)(iv). At step five, if the RFC indicates that the claimant cannot engage in past work, then "the burden shifts to the Commissioner" to prove that the claimant's RFC, age, education, and past work experience indicate that she is "able to perform 'other work'" that exists in the national economy. *Butler*, 353 F.3d at 997 (citing §§ 404.1520(f), 416.920(f)).

Factual Background

    1. *Gibson's Testimony*

Gibson's alleged disability began on January 31, 2017, at which time she stopped working. *See* AR 180. The alleged disability followed an injury to her back, neck, and shoulder while working as a bus driver. *See* AR 296, 483. She testified at the hearing and in her adult function reports that she cared for her personal needs—including dressing, bathing, laundry, caring for hair, feeding herself, using the toilet, and cleaning—but sometimes needed help getting dressed or caring for her hair. *See* AR 65–66, 237. She reported that she generally prepared her meals twice per week. *See* AR 65, 238. She sometimes shopped for food and completed light household chores, but other times needed help from her children, her mother, or a friend. *See* AR 66, 238–39. She testified that she generally attended church once a week and reported going to doctor's appointments. *See* AR 67, 240. She typically drove herself when leaving the house, but occasionally needed assistance. *See* AR 239–40.

    2. *Medical Evidence*

On February 1, 2017, Dr. Polo-Zisa examined Gibson at Concentra Medical Center ("Concentra"). *See* AR 970. Dr. Polo-Zisa concluded that Gibson's lumbosacral spine had no tenderness and a full range of motion; her thoracic spine was tender with painful, but full, range of motion; and she ambulated with a normal gait. *See* AR 970. Gibson's straight-leg raise test was negative bilaterally. *See* AR 970.

On February 16, 2017, Dr. Pickett examined Gibson at Concentra. *See* AR 916. Gibson had a negative straight-leg raise test and ambulated with a normal gait. *See* AR 916–17. On March 7, 2017, Dr. Shah examined Gibson at Concentra. *See* AR 910. Her cervical and thoracic spine showed no tenderness with a full range of motion. *See* AR 911. On May 4, 2017, Dr. Raizman

concluded that an April 2017 MRI of Gibson's cervical spine showed a malformation and multilevel herniated disks. *See* AR 39, 1052. On July 18, 2017, Nurse Practitioner Hockman and Dr. Silverio evaluated Gibson's back pain. *See* AR 702. They observed lumbar spine tenderness, but a normal range of motion and ambulation with a normal gait. *See* AR 702.

On November 15, 2017 and January 11, 2018, Dr. Onyewu examined Gibson and observed spine tenderness, but a normal range of motion. *See* AR 488, 767, 769. Gibson ambulated with an antalgic gait.[2] *See* AR 488, 767, 769. Gibson's straight-leg raise test was negative bilaterally during both examinations. *See* AR 488, 769. On April 5, 2018, Dr. Onyewu examined Gibson again and reviewed an MRI of her cervical spine. *See* AR 751, 753. The MRI showed disc herniations; however, motor strength was normal. *See* AR 752–54. Gibson's straight-leg raise test was positive at thirty degrees and she ambulated with an antalgic gait. *See* AR 754–55.

On May 29, 2018, Dr. Nolte examined Gibson. *See* AR 786. Dr. Nolte observed that she ambulated with a slow gait, but had a normal stance and could "walk on [her] heels and toes without difficulty," get up and out of a chair without difficulty, and needed no help getting on and off the exam table. AR 788. Gibson had moderate limitations in bending and squatting, and a mild limitation in walking. *See* AR 790. On June 21, 2018, Dr. Raizman examined Gibson again and observed that she had decreased cervical spine range of motion and that her straight-leg raise test was positive bilaterally. *See* AR 1116.

From August 2018 to November 2019, Gibson continued to visit several doctors regarding her back pain. These doctors concluded that her back exams and range of motion were normal, *see* AR 421–22, and that she ambulated with a normal gait, *see* AR 1355. Dr. Venkataram, a state

---

[2] An antalgic gait occurs when a person walks with a limp because of pain. *See* Cheryl Whitten, *What Is an Antalgic Gait?*, WEBMD, https://www.webmd.com/pain-management/what-is-antalgic-gait (last visited Nov. 21, 2022).

4

agency consulting physician, opined that Gibson could perform work at a light exertion level, consistent with objective evidence of her back pain, and found her not disabled. *See* AR 92–94, 97–98.

However, in September 2018 and March 2019, Dr. Onyewu examined Gibson and made some contrary findings. *See* AR 822, 1475. Dr. Onyewu observed that Gibson ambulated with an antalgic gait, but his examination of her spine showed a normal range of motion, with pain. *See* AR 826, 1475–77. Dr. Onyewu also noted that there was evidence of spinal tenderness, *see* AR 826, and that Gibson's straight-leg raise test was positive at thirty degrees, *see* AR 826, 1477. On May 22, 2020, Dr. Onyewu examined her again. *See* AR 16. Dr. Onyewu concluded that Gibson suffered from chronic lower back pain. *See* AR 21. Dr. Onyewu advised her to avoid activities such as "lifting, prolonged standing, walking," and climbing. AR 21.

Procedural Background

On December 20, 2017, Gibson applied for disability benefits. *See* AR 31, 180. On July 27, 2018, the SSA denied her claim. *See* AR 118. On November 5, 2018, the SSA denied her request for reconsideration. *See* AR 31, 127. On November 26, 2019, ALJ Raghav Kotval held a hearing on Gibson's claim. *See* AR 31, 53.

On January 16, 2020, the ALJ ruled Gibson was not disabled. *See* AR 47. At step one, the ALJ determined that Gibson had not engaged in any substantial gainful activity since the disability onset date. *See* AR 33. At step two, the ALJ found that Gibson had severe impairments of "spine disorders (cervical and lumbar)" among others. AR 33. At step three, the ALJ determined that Gibson did not have an impairment or combination of impairments that met or medically equaled the criteria of Listing 1.04 (disorders of the spine). *See* AR 34–35. At step four, the ALJ found that Gibson had the RFC to perform light work with some limitations. *See* AR 37. Specifically, she

could "lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. She [could] sit for 6 hours in an 8-hour workday. She [could] stand and walk for 6 hours in an 8-hour workday." AR 37. Gibson could "only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl." AR 37. Thus, the ALJ limited Gibson to "simple, routine tasks, not at a production pace, performed in two-hour increments" before needing a break. AR 37. The ALJ concluded that Gibson's severe impairments did not lead to debilitating effects on her functional abilities. *See* AR 38. At step five, the ALJ determined that there were jobs in significant numbers in the national economy that Gibson could perform. *See* AR 46. In reaching this conclusion, the ALJ relied on the testimony of a vocational expert ("VE"). *See* AR 46–47, 78–80. The ALJ asked the VE to assume a hypothetical individual of Gibson's age and education who could perform a full range of light work with the above-referenced limitations. *See* AR 76. The VE responded that such an individual could make a successful adjustment to a significant number of jobs in the national economy, such as a greeter/usher, hostess, or information clerk. *See* AR 46, 79.

Gibson appealed the ALJ's decision, which the Appeals Council declined to review. *See* AR 4–6. Gibson now seeks review of the ALJ's decision. *See* Pl.'s Mot. She argues that the ALJ committed reversible error at step three because her impairments satisfied Listing 1.04A.[3] *See id.* at 2, 5–12.

---

[3] The Court pauses briefly to note that on April 2, 2021, the SSA updated the musculoskeletal listings. *Revised Medical Criteria for Evaluating Musculoskeletal Disorders Final Rules Questions and Answers*, SSA, https://www.ssa.gov/thirdparty/materials/pdfs/21-489_Musculoskeletal_FAQs.pdf (last visiting Nov. 22, 2022). Listing 1.04 became Listing 1.15, with additional requirements. *See 1.00 Musculoskeletal Disorders – Adult*, SSA, https://www.ssa.gov/disability/professionals/bluebook/1.00-Musculoskeletal-Adult.htm#1_15 (last visited Nov. 22, 2022). For consistency, the Court will continue to refer to Listing 1.04 in accordance with the parties' briefing refers to Listing 1.04. S*ee* Pl.'s Mot.; Def.'s Mot.

[3] Gibson only claims to meet the criteria of Paragraph A. *See* Pl.'s Mot. at 2.

6

## II. LEGAL STANDARD

Upon review, "[t]he court must uphold the [ALJ's] determination if it is supported by substantial evidence and is not tainted by an error of law." *Smith v. Bowen,* 826 F.2d 1120, 1121 (D.C. Cir. 1987). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Butler*, 353 F.3d at 999 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). This standard "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Fla. Mun. Power Agency v. Fed. Energy Regul. Comm'n*, 315 F.3d 362, 365–66 (D.C. Cir. 2003) (cleaned up). "Substantial-evidence review is highly deferential to the agency fact-finder." *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008). On review, the "plaintiff bears the burden of demonstrating that the Commissioner's decision [was] not based on substantial evidence or that incorrect legal standards were applied." *Settles v. Colvin*, 121 F. Supp. 3d 163, 169 (D.D.C. 2015) (cleaned up).

The reviewing court may not replace the ALJ's judgment "concerning the credibility of the evidence with its own." *Goodman v. Colvin*, 233 F. Supp. 3d 88, 104 (D.D.C. 2017) (cleaned up). Rather, "[t]he credibility determination is solely within the realm of the ALJ." *Grant v. Astrue*, 857 F. Supp. 2d 146, 156 (D.D.C. 2012).

## III. ANALYSIS

### A. Evaluation of Spinal Disorder Under Listing 1.04 at Step Three

#### 1. *Legal Standard*

The criteria of the listings in step three "are more restrictive than the statutory disability standard" because they describe impairments that are "severe enough to prevent a person from doing any gainful activity," not just substantial gainful activity. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (quoting § 416.925(a)). "For a claimant to show that h[er] impairment matches a

listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530 (emphasis in original). The claimant bears the burden of proving a presumptively disabling impairment. *See id.* at 525.

Listing 1.04 requires Gibson to show that she had a disorder of the spine and that she met an additional criterion contained in paragraphs A, B, or C. *See* 20 C.F.R. Part 404, Subpart P, App. 1, 1.04. Paragraph A requires "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory loss or reflex loss and, if there is involvement of the lower back, positive straight-leg raise test (sitting and supine)."[4] 20 C.F.R. Part 404, Subpart P, App. 1, 1.04.

In evaluating the ALJ's decision at step three, "th[is] Court is not confined to the ALJ's analysis at step three and instead must consider the reasoning provided by the ALJ in the decision in its entirety." *Al Hulais v. Comm'r. of Soc. Sec. Admin.*, No. 18-cv-118, 2018 WL 6704756, at *6 (D. Md. Dec. 20, 2018); *see also Colter v. Kijakazi*, No. 20-cv-632, 2022 WL 715218, at *11 (D.D.C. Mar. 10, 2022) (the ALJ "provid[ed] a sufficient basis for this Court to understand his reasoning when viewing the decision as a whole"). For example, an ALJ's reasons why a claimant was not disabled at step four may "provide [a] rationale that is sufficient for [a court] to determine the basis for the finding about [no] medical equivalence at step 3." SSR 17-2p, 2017 WL 3928306, at *4 (Mar. 27. 2017).[5]

---

[4] Gibson only claims to meet the criteria of Paragraph A. *See* Pl.'s Mot. at 2.
[5] "Although Social Security Rulings . . . do not have the force of law, they are entitled to deference so long as they are consistent with the [SSA] and regulations." *Nelson v. Comm'r of Soc. Sec. Admin.*, No. 19-cv-788, 2021 WL 1207753, at *4 (citing *Fair v. Shalala*, 37 F.3d 1466, 1469 (11th Cir. 1994)).

2. *Substantial Evidence Supports the ALJ's Determination that Plaintiff's Impairment Did Not Meet Listing 1.04A*

The ALJ "specifically identifie[d] Listing [1.04], describe[d his] reasons for concluding that Plaintiff's condition d[id] not meet or medically equal that Listing, and [went] on to discuss the evidence in the record in significant detail." *Conway ex rel. Tolen v. Astrue*, 554 F. Supp. 2d 26, 35 (D.D.C. 2008); *see* AR 34, 38–45. There was no requirement "that the ALJ provide an exhaustive point-by-point breakdown of every listed impairment. Rather, the ALJ [satisfied his obligation] to provide a coherent basis for his step-three determination" by discussing the medical evidence, disability report, and consultative examiner reports. *Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018); *see* AR 34–35.

First, "[d]uring h[is] step three analysis, the ALJ explained why Gibson failed to meet the requirements of Listing 1.04A" based on the medical evidence. *Al Hulais*, 2018 WL 6704756, at *7; *see* AR 35. Specifically, the ALJ explained:

> The record contains evidence of cervical and lumbar spine degeneration, which led to reduced range of motion and back pain (Ex. 26F). The claimant's lower extremity strength was slightly decreased. However, on examination by Dr. Nolte, the straight-leg raising test was negative bilaterally. The claimant's gait was slow, but she could walk on her heels and toes without difficulty. Her stance was normal. She used no assistive devices. She needed no help changing for the exam or getting on and off the exam table. She was able to rise from a chair without difficulty. This evidence is inconsistent with an inability to ambulate effectively.

AR 35. The ALJ thus identified Listing 1.04A and described his "reasons for concluding that Plaintiff's condition d[id] not meet . . . that Listing" before going "on to discuss the evidence . . . in significant detail" at step four. *Conway*, 554 F. Supp. 2d at 35; *see* AR 34, 38–45.

In his step four "discussion of [Gibson's] relevant medical evidence, the ALJ cited substantial evidence in the record demonstrating that Plaintiff did not meet all of the requirements for Listing 1.04A." *Al Hulais*, 2018 WL 6704756, at *8; *see* AR 38–45. Treatment reports,

9

including those of Dr. Onyewu, indicated some spinal tenderness; however, those reports also showed that Gibson retained a range of motion within normal limits—if not a full range of motion. *See* AR 39, 437, 767–69, 970, 1475–77. Treatment records from this period indicated there was no sciatic tenderness, *see* AR 38, 916–17, 752–54, despite Gibson's diagnosis of a malformation and claims of significant pain.," AR 39, 1051. The medical evidence also indicated that Gibson did not exhibit significant lumbosacral spine tenderness and her lumbar range of motion was within normal limits. *See* AR 38, 702, 970. Gibson's motor strength was normal on several occasions. *See* AR 38–43, 488, 752–54, 911, 970. Her neurovascular function was also intact. *See* AR 39, 916–17. Additionally, during the May 2018 consultative examination, Gibson had a normal stance and could "walk on her heels and toes, get up and out of a chair without difficulty, and needed no help getting on and off the exam table." AR 24; *see* AR 35, 41, 788. These "repeated findings . . . of full strength . . . preclude a finding of 'motor loss . . . accompanied by sensory or reflex loss." *Knight v. Kijakazi*, No. 20-cv-2734, 2022 WL 1746963, at *7 (D.S.C. Mar. 28, 2022) (cleaned up). Thus, "there [was] elsewhere in the ALJ's opinion an equivalent discussion of the medical evidence relevant to the [s]tep [t]hree analysis which allows this Court readily to determine whether there was substantial evidence to support the ALJ's [s]tep [t]hree conclusion." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 522 (D. Md. 2002).

Additionally, "the regulation's text is clear that where, as here, 'there is involvement of the lower back,' the claimant must produce evidence of positive [straight-leg raise] testing[.]" *Watlington v. Berryhill*, No. 16-cv-46, 2017 WL 7053988, at *9 (W.D. Va. Dec. 20, 2017) (cleaned up); *see* 20 C.F.R Part 404 Subpart P, App. 1, 1.04. "The absence of positive findings from . . . straight-leg raising tests is enough to prevent [a plaintiff] from meeting Listing 1.04(A)[.]" *Watlington*, 2017 WL 7053988, at *9. Gibson provided some evidence of positive

straight-leg raise tests and antalgic gait. *See* AR 488, 752–54, 767, 769, 1116, 1475–77. However, multiple examinations contradicted that evidence. *See* AR 38–44. In two examinations in February 2017, Gibson ambulated with a normal gait, and her straight-leg raise test was negative bilaterally. *See* AR 38, 916–17, 970. In July 2017, Gibson again ambulated with a normal gait. *See* AR 39, 702. In both November 2017 and January 2018, the straight-leg raise test was negative bilaterally. *See* AR 40, 488, 769. Finally, in November 2019, Gibson again ambulated with a normal gait. *See* AR 43, 1355. The lack of uncontradicted evidence of positive straight-leg raise tests and substantial defects in Gibson's gait indicates that "the Listing 1.04A requirement of motor loss . . . was [] not met." *Peters v. Comm'r of Soc. Sec. Admin.*, No. 17-cv-2371, 2018 WL 4223155, at *6 (D. Md. Sept. 5, 2018); *see Al Hulais*, 2018 WL 6704756, at *8; AR 35–45. "Therefore, in light of the evidence in the medical record . . . , the Court concludes that substantial evidence supports the ALJ's finding that [Gibson's] impairments do not meet or equal Listing 1.04A." *Al Hulais*, 2018 WL 6704756, at *8; *see* AR 35–45.

Second, "[although] the ALJ need not articulate his reasons for rejecting every piece of evidence, he must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position." *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006) (quoting *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000)). The amount of contradictory evidence the ALJ must consider depends on the case and strength of evidence. *See Demetria R. v. Kijakazi*, No. 20-cv-3227, 2022 WL 3142376, at *21 (D.D.C. June 30, 2022). Ultimately, the ALJ should consider whether the opinion is supported by "objective medical evidence" and whether it is consistent with "the evidence from other medical . . . and nonmedical sources." *Id.* (finding ALJ's consideration of two contrary medical reports sufficient since substantial evidence supported his evaluation of the "supportability" and "consistency" of the reports); *see Abigail R.*

11

*v. Kijakazi*, No. 21-cv-13, 2022 WL 19676, at *8 (D. Neb. Jan. 3, 2022) (same); *O'Brien v. Saul*, No. 18-cv-12634, 2020 WL 1169459, at *7 (D. Mass. March 11, 2020) (finding ALJ's consideration of one contrary medical report sufficient since it was "inconsistent with the overall weight of the evidence" and supported by "substantial evidence").

Here, the ALJ indicated not only "what evidence was credited, but also whether other evidence was rejected," rather than simply ignored. *Brown v. Bowen*, 794 F.2d 703,708 (D.C. Cir. 1986); *see* AR 44–45. The ALJ explained that Gibson's positive back findings contradicted other medical evidence that did not indicate motor loss or an inability to ambulate effectively, *see* AR 35, and his explanation was supported by substantial evidence, *see* AR 437, 970, 788; *Broyles v. Astrue*, 910 F. Supp. 2d 55, 62 (D.D.C. 2012). Specifically, the ALJ noted treatment records wherein Gibson's straight-leg raise tests were negative, *see* AR 35, and she ambulated with a normal gait, *see* AR 44, 437, 970, 1355. Indeed, Dr. Nolte's examination revealed that Gibson had a normal stance and could "walk on her heels and toes, get up and out of a chair without difficulty, and needed no help getting on and off the exam table." AR 34, 788. This contradicted examinations by Dr. Onyewu and Dr. Raizman, wherein Gibson ambulated with an antalgic gait, and had positive straight-leg raise tests and slightly decreased motor strength. *See* AR 752–54, 767–769, 1116, 1475–77.

"[E]ven if [Dr. Onyewu and Dr. Raizman's] opinion[s] [were] persuasive in some respects, the Court must defer to the contrary finding of the ALJ so long as it is supported by substantial evidence[.]" *Demetria R.*, 2022 WL 3142376, at *22. The ALJ considered at least four other medical reports inconsistent with those of Dr. Onyewu and Dr. Raizman. *See* AR 39–45. "That is substantial evidence[.]" *Demetria R.*, 2022 WL 3142376, at *22 (ALJ's consideration of two medical reports showing Plaintiff did not meet a listing constituted substantial evidence to support

ALJ's conclusion that reports which supported Plaintiff's position were properly discounted as contrary evidence); *see also Broyles*, 910 F. Supp. 2d at 62 (ALJ's consideration of contradictory evidence sufficient because the ALJ explained why such evidence conflicted with other medical evidence). The Court cannot "reweigh the evidence" in [Gibson's favor. *Id.* at 60 (internal citations omitted). Thus, the ALJ "provided an adequate basis, supported by substantial evidence, for finding the reports of [Dr. Onyewu and Dr. Raizman] less-than-totally-persuasive." *Demetria R.*, 2022 WL 3142376, at *21; *see* AR 39–44.

Third, an ALJ need not "spell out every aspect of what a listing includes . . . as long as his discussion of the evidence is not perfunctory." *Mangan v. Colvin*, No. 12-cv-7203, 2014 WL 1908937, at *5 (N.D. Ill. May 13, 2014). For example, an ALJ's analysis totaling "three sentences" to dismiss "the possibility that [a claimant met] or medically equal[ed] Listing 1.04's criteria" was inadequate. *Watson, Jr., v. Berryhill*, No. 16-cv-089, 2018 WL 3434711, at *4 (N.D. Ind. July 17, 2018). Unlike in *Watson*, the ALJ here "discuss[ed] the listing by name" and spent three pages detailing why Listing 1.04 did not apply. *Barnett v. Barnhart*, 381 F. 3d 664, 668 (7th Cir. 2004); *see* AR 34–36. This "reasoning was not perfunctory or inadequate." *Keys v. Colvin*, No. 14-cv-250, 2016 WL 447519, at *6 (N.D. Ind. Feb. 5, 2016).

3. *Medical Equivalence*

a. Steps Four and Five Analysis Rebutted Medical Equivalence

If an ALJ "believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the [ALJ] is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment." SSR 17-2p, 2017 WL 3928306, at *4 (Mar. 27. 2017). Instead, "a statement that the individual's impairment(s) does not

13

medically equal a listed impairment constitutes sufficient articulation for this finding" because the ALJ's "articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step [three]." *Id.*

The ALJ's analysis at steps four and five demonstrated no medical equivalence. *See* AR 37. "The ALJ was aware of the medical records showing the existence of Plaintiff's [impairments], as he found those impairments to be severe . . . . But a reasonable reading of his decision shows that he found that the records did not support a finding of functional limitations from Gibson's impairments], much less severe limitations." *Coscarelli v. Saul*, No. 19-cv-1219, 2021 WL 8053621, at *9 (W.D. Tex. Jan. 29, 2021); *see* AR 33, 37. Indeed, the ALJ found that Gibson had the RFC to perform light work. *See* AR 37. She could "lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. She [could] sit for 6 hours in an 8-hour workday. She [could] stand and walk for 6 hours in an 8-hour workday." AR 37. The ALJ also "noted that . . . the consultative examination indicated a lack of functional limitations." *Coscarelli*, 2021 WL 8053621, at *9; AR 41, 44–45. Additionally, the ALJ determined at step five that there were jobs that Gibson could perform. *See* AR 46. He concluded that Gibson could make a successful adjustment to a significant number of light, unskilled jobs in the national economy, such as a greeter/usher, hostess, or information clerk. *See* AR 46, 79. "[The ALJ's] discussion at step[s] four [and five] provide[] a sufficient rationale and substantial evidence supports a finding that Plaintiff does not meet [or medically equal] Listing [1.04A]." *Coscarelli*, 2021 WL 8053621, at *9; AR 37–47.

      b.  Evidence of Daily Living Rebutted Medical Evidence

The ALJ also considered substantial evidence that Gibson did "not have marked difficulties in daily living." *Meador v. Colvin*, No. 13-cv-214, 2015 WL 1477894, at *4 (W.D. Va. Mar. 27, 2015); *see* AR 37, 237. Gibson's "ability to perform daily activities, such as taking personal care, preparing simple meals, and shopping in stores . . . provide substantial evidence for the ALJ['s]" finding that Gibson was not disabled. *Magee v. Berryhill*, No. 17-cv-1922, 2019 WL 329571, at *4 (D.D.C. Jan. 25, 2019); *see* AR 37–38, 65–67. That is, Gibson's "activities of daily living confirmed that she was not as functionally limited as she contended." *Goodman*, 233 F Supp. 3d at 112. This independently supports the ALJ's finding that Gibson did medically equal a Listing 1.04A impairment.

### c. Physician Reports Rebutted Medical Equivalence

"[Although] the ALJ . . . makes the ultimate decision on medical equivalence . . . 'the judgment of a physician designated by the Commissioner on the issue of equivalence . . . must be received into the record as expert opinion evidence and given appropriate weight.'" *Mitchell v. Colvin*, No. 12-cv-1573, 2016 WL 509281, at *3 (D.D.C. Feb. 8, 2016) (quoting SSR 96-6p, 61 Fed. Reg. 34466, 34468 (July 2, 1996)). The signed opinions of several state agency physicians finding that Gibson "was not disabled constitute[d] probative evidence of a lack of equivalence." *Phelps v. Astrue*, No. 10-cv-240, 2011 WL 2669637, at *5 (D. N.H. July 7, 2011); AR 82–124. The ALJ not only discussed the state agency physicians' opinions on the record, but also found them "highly persuasive." AR 44. In so doing, the ALJ fulfilled his obligation "to adequately explain his reasoning, including which evidence is credited and which is rejected." *Mitchell*, 2016 WL 509281, at *3.

Contrary to Gibson's argument, the ALJ was not compelled to seek additional expert evidence. *See* Pl.'s Mot. at 11–12. ALJs "may ask for and consider evidence from medical

experts." SSR 17-2p, 2017 WL 3928306, at *3 (Mar. 27. 2017). However, because the ALJ believed that the "evidence [did] not reasonably support a finding that [Gibson's] impairment(s) medically equal[ed]" Listing 1.04A, the ALJ was not required "to obtain ME (Medical Expert) evidence . . . prior to making a step [three] finding that [Gibson's] impairment(s) [did] not medically equal [Listing 1.04A]." SSR 17-2p, 2017 WL 3928306, at *4 (Mar. 27. 2017).; *see* AR 34.

## IV. CONCLUSION

There was substantial evidence that the ALJ did not err in concluding that Gibson did not meet or medically equal the listing criteria for a 1.04A. Therefore, as set out in an accompanying order, Plaintiff's Motion for Judgment of Reversal will be denied, and Defendant's Motion for Judgment of Affirmance will be granted.

Date:   November 23, 2022   _____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE